UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| KEITH TORRENCE, SR., | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | No. 1:18-cv-2758-JMS-DML |
| | ) | |
| MILESTONE CONTRACTORS, LP, | ) | |
| | ) | |
| *Defendant*. | ) | |

## ORDER

Plaintiff Keith Torrence, Sr. filed this action against his former employer, Milestone Contractors, LP ("Milestone"), alleging that he was discriminated against based on his race and retaliated against for reporting discrimination, in violation of 42 U.S.C. § 1981. Milestone has filed a Motion for Summary Judgment, [Filing No. 35], which is now ripe for the Court's decision.

## I.
### STANDARD OF REVIEW

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). As the current version of Rule 56 makes clear, whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). A party can also support a fact by showing that the materials cited do not establish the absence or presence of a genuine dispute or that the adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(B). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the granting of summary judgment. Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court need only consider disputed facts that are material to the decision. A disputed fact is material if it might affect the outcome of the suit under the governing law. *Hampton v. Ford Motor Co.*, 561 F.3d 709, 713 (7th Cir. 2009). In other words, while there may be facts that are in dispute, summary judgment is appropriate if those facts are not outcome determinative. *Harper v. Vigilant Ins. Co.*, 433 F.3d 521, 525 (7th Cir. 2005). Fact disputes that are irrelevant to the legal question will not be considered. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

On summary judgment, a party must show the Court what evidence it has that would convince a trier of fact to accept its version of the events. *Johnson v. Cambridge Indus.*, 325 F.3d 892, 901 (7th Cir. 2003). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). The Court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Darst v. Interstate Brands Corp.*, 512 F.3d 903, 907 (7th Cir. 2008). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). The Court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has "repeatedly assured the district courts that they are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them." *Johnson*, 325 F.3d at 898. Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Ponsetti v. GE Pension Plan*, 614 F.3d 684, 691 (7th Cir. 2010).

The following factual background is set forth pursuant to the standards detailed above. The facts stated are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light most favorable to "the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

Mr. Torrence is African American. [Filing No. 41-1 at 2.] He received his journeyman card to become an operating engineer in 1995 and since then has been a member of the International Union of Engineers ("the Union"). [Filing No. 35-1 at 4; Filing No. 41-1 at 2.] He has many years of experience operating construction equipment including a backhoe, power broom, steer skid, roller, and shuttle buggy. [Filing No. 41-1 at 2.] However, Mr. Torrence does not possess, and has never possessed, a commercial driver's license ("CDL"), which is required to drive certain types of trucks and/or equipment used in construction. [Filing No. 35-3 at 13; Filing No. 35-5 at 6.]

The Union has a referral system whereby it refers its members to perform work for employers in need of services. [Filing No. 41-1 at 2.] Generally, whenever an employer, such as Milestone, needs an operator to perform a specific job, the employer requests one from the Union, and the Union in turn dispatches an operator based on qualifications and seniority. [Filing No. 35-1 at 14; Filing No. 35-3 at 4-5; Filing No. 35-5 at 4.] Sometimes, however, if a particular operator has previously worked for a given employer, the employer can contact the operator directly and request that the operator return to work for the employer. [Filing No. 35-5 at 5; Filing No. 41-1 at 2.] This direct callback process requires that the operator have "callback rights"—which means

that the operator has been with the Union for at least one year—and is subject to Union rules, including those related to seniority. [Filing No. 35-5 at 8; Filing No. 41-1 at 2.]

Mr. Torrence was first referred to Milestone through the Union process in early September 2014 to operate a self-propelled power broom. [Filing No. 35-1 at 7; Filing No. 41-1 at 2-3.] When that project ended a few weeks later, he was referred to Milestone again to operate the power broom for another project. [Filing No. 35-1 at 7-8.] During these projects, Mr. Torrence operated the power broom, backhoe, and roller. [Filing No. 35-3 at 11-12.] Brad Washburn, a Milestone employee who supervised Mr. Torrence in 2014, testified that Mr. Torrence's performance at Milestone was satisfactory. [Filing No. 35-5 at 8-9.] On November 15, 2014, Mr. Torrence was laid off of work at Milestone and was told the layoff was due to lack of work. [Filing No. 41-1 at 3.] Mr. Washburn stated that Mr. Torrence was laid off because "work was slowing," which is common in the industry as winter approaches and "the weather starts getting bad." [Filing No. 35-5 at 11.] The work that Mr. Torrence performs as an operator is largely seasonal, and it is common for him to be laid off during the winter months. [Filing No. 35-1 at 8.] In his 27 years as an operating engineer, he has only worked during one or two winters. [Filing No. 35-1 at 8.]

Mr. Torrence was called back to Milestone in March of 2015 to operate a backhoe. [Filing No. 35-1 at 8; Filing No. 35-1 at 16; Filing No. 35-3 at 11; Filing No. 41-1 at 3.] He testified that Mr. Washburn is the person who called him back, and that Mr. Washburn said that Mr. Torrence had done a good job the previous year. [Filing No. 35-3 at 11.] Mr. Washburn did not recall specifically requesting that Mr. Torrence return, but he acknowledged it was possible that he did so. [Filing No. 35-5 at 11.] Mr. Torrence worked at Milestone from March to November 2015, primarily operating a backhoe but sometimes operating other equipment, such as the power broom,

steer skid, roller, and shuttle buggy.  [Filing No. 35-3 at 17; Filing No. 41-1 at 3.]  Mr. Washburn supervised Mr. Torrence during his time at Milestone in 2015.  [Filing No. 35-5 at 11.]

In July 2015, Jason Rebeck, a Caucasian operating engineer, was hired by Milestone to operate a backhoe.  [Filing No. 35-5 at 6; Filing No. 41-1 at 3.]  Mr. Washburn testified that Mr. Rebeck primarily operated a backhoe but occasionally also used a power broom or drove a dump truck.  [Filing No. 35-5 at 6.]  Driving the dump truck required a CDL, which Mr. Rebeck had.  [Filing No. 35-5 at 6; Filing No. 35-7 at 7.]  Mr. Torrence says that he never saw Mr. Rebeck driving a dump truck.  [Filing No. 41-1 at 3.]  Another Milestone employee, Pamela Genus, averred that she saw Mr. Rebeck at work every day from the day Mr. Torrence was laid off until the day she was laid off, and she never saw Mr. Rebeck driving a dump truck or any other sort of truck, but instead only saw him operating a backhoe.  [Filing No. 41-2 at 3.]

Mr. Torrence believes that Mr. Rebeck was hired to replace another employee, Mike Spencer, who told Mr. Torrence that he left because he no longer wanted to work for Mr. Washburn.  [Filing No. 35-3 at 19.]  According to Mr. Torrence, Mr. Spencer said that he did not like Mr. Washburn because Mr. Washburn was "prejudiced," "didn't like blacks," and had used the n-word on several occasions in the presence of, or to refer to, African American employees.  [Filing No. 35-3 at 19; Filing No. 41-1 at 4.]  Mr. Spencer later told Mr. Torrence that, in December 2015, Mr. Washburn sent gift cards for Christmas to only the Caucasian employees and instructed the Caucasian employees "not to tell the blacks" about the gifts.  [Filing No. 35-1 at 18; Filing No. 35-3 at 19; Filing No. 41-1 at 4.]  Mr. Torrence stated that he never personally heard Mr. Washburn use the n-word or other derogatory language; he just heard about it from Mr. Spencer and one other employee, John Means, who confirmed what Mr. Spencer said.  [Filing No. 35-1 at 17-18.]

According to Ms. Genus, who is African American, Mr. Washburn "treated African-American employees more harshly than Caucasian employees." [Filing No. 35-3 at 18; Filing No. 41-2 at 2.] Specifically, he would chastise African American employees, but would not chastise Caucasian employees who engaged in the same conduct. [Filing No. 41-2 at 2.] For example, according to Ms. Genus, "if work slowed and African-American employees took a break and talked briefly, [Mr.] Washburn would yell at [them] and rudely order [them] to get back to work," but if Caucasian employees did the same thing, Mr. Washburn "would say nothing or join in the conversation." [Filing No. 41-2 at 2.]

Ms. Genus averred that, sometime in September or October of 2015, she, Mr. Torrence, and another African American employee "confronted" Mr. Washburn, and Mr. Torrence "complained to [Mr.] Washburn that he was treating African-American employees more harshly than Caucasian employees." [Filing No. 41-2 at 3.] Mr. Washburn responded that he knew he was a "dick" but there was nothing the employees could do about it, because if they complained to Milestone management they would be laughed at. [Filing No. 41-2 at 3.] Mr. Torrence testified that this incident happened in October, and that Mr. Washburn had approached the group of African American employees, unsolicited, and told them that he knew he was a "dick" and there was nothing they could do about it. [Filing No. 35-3 at 20.] Mr. Torrence testified that he responded to Mr. Washburn by stating that Mr. Washburn was creating a "hostile environment" and it was wrong to speak to his employees like that. [Filing No. 35-3 at 20.] Mr. Washburn denies that this conversation occurred. [Filing No. 35-5 at 3.]

Other than this conversation, Mr. Torrence never heard Mr. Washburn say anything offensive or inappropriate or make any comments about race. [Filing No. 35-3 at 24.] Nevertheless, Mr. Torrence believed that Mr. Washburn "didn't like blacks." [Filing No. 35-3 at

24.] When asked to state the reasons for this belief, Mr. Torrence said that it was because he was retaliated against and he "lost [his] job for complaining." [Filing No. 35-3 at 24.]

In January 2016, Mr. Torrence reported the October conversation to Russell Randle, Milestone's Safety Director. [Filing No. 35-2 at 9; Filing No. 35-3 at 20; Filing No. 41-1 at 4.] He also complained to Mr. Randle about the allegation that Mr. Washburn had given gift cards to Caucasian employees only. [Filing No. 35-2 at 9; Filing No. 41-1 at 4.] According to Mr. Torrence, Mr. Randle investigated the gift card situation and reported back to Mr. Torrence that he had not received a gift card because of a safety violation that occurred on the job. [Filing No. 35-3 at 21.] Mr. Torrence stated that he did not believe that explanation because the other employees who were present during the safety violation still received their gift cards. [Filing No. 35-3 at 21.] The incident report, signed by Mr. Washburn and Mr. Torrence, lists Mr. Torrence as the only involved employee. [Filing No. 35-7 at 9-10.]

According to Mr. Torrence, in January 2016, he also complained to Karen Lucas, a human resources representative at Milestone, and told her the same things that he had told Mr. Randle. [Filing No. 35-2 at 9; Filing No. 41-1 at 4.] Ms. Lucas told Mr. Torrence that she had investigated the complaint but "found nothing." [Filing No. 35-3 at 21.] Mr. Torrence stated that he told both Mr. Randle and Ms. Lucas that he was being discriminated against due to his race. [Filing No. 35-1 at 17.] Mr. Torrence has no knowledge of whether his complaints were ever communicated to Mr. Washburn, but he believed that they were because he was not called back to work for Milestone in 2016. [Filing No. 35-3 at 20-21.] Mr. Washburn denies ever having any discussion with Ms. Lucas about allegations of racial discrimination. [Filing No. 35-5 at 3.]

According to Mr. Washburn, near the end the 2015 season, some of the work that was being done by the Milestone crew required the use of a dump truck. [Filing No. 35-5 at 6; Filing No.

35-5 at 15.] Mr. Washburn was "certain" that driving the dump truck required a CDL and he knew that Mr. Rebeck had a CDL.  [Filing No. 35-5 at 6.]  Mr. Washburn stated that he had laid off Mr. Torrence in 2015 because "work was slowing down," and he decided to keep Mr. Rebeck working because Mr. Rebeck had a CDL and "that gave [Milestone] a lot of options, because we were using a dump truck for different types of work that we were doing."  [Filing No. 35-5 at 12-13.]  When asked if the CDL was the only reason that Mr. Rebeck was kept on the project, Mr. Washburn stated: "That was a lot of it. He was probably better on a backhoe than [Mr. Torrence]."  [Filing No. 35-5 at 13.]  Mr. Torrence stated that he was told that he was being laid off because he did not have a CDL, but he believes that the real reason he was laid off was because Mr. Washburn "didn't like blacks" and did not want Mr. Torrence around anymore.  [Filing No. 35-3 at 26; Filing No. 41-1 at 3.]  Also on Mr. Washburn's crew in 2015 was Doug Rogers, a Caucasian operator who had a CDL and drove a truck that hauled supplies, as well as John Means, another Caucasian operator who also had a CDL.  [Filing No. 35-5 at 13-14.]

In the spring of 2016, Mr. Rebeck was called back to work for Milestone, but Mr. Torrence was not.  [Filing No. 35-5 at 13; Filing No. 41-1 at 4.]  When asked why Mr. Rebeck was called back in 2016 instead of Mr. Torrence, Mr. Washburn stated that it was "[b]ecause we were starting out slower, and [Mr. Rebeck] had the CDL."  [Filing No. 35-5 at 13.]  He stated that a dump truck was necessary to complete some of the work that needed to be done at the beginning of the season, and also stated that, based on his own observations, Mr. Rebeck was more skilled at operating equipment than Mr. Torrence.  [Filing No. 35-5 at 15.]  Mr. Torrence believes that the reason he was not called back in 2016 was because of his race and because he was being retaliated against for complaining about Mr. Washburn.  [Filing No. 35-3 at 28.]  Mr. Rebeck only worked for Milestone for one day in 2016 because it was discovered that he had not been a member of the

Union for at least a year, and therefore did not have callback rights.  [Filing No. 35-5 at 8.]  Mr. Rogers and Mr. Means were also called back to Milestone in 2016.  [Filing No. 35-5 at 13-14.]

Mr. Torrence filed the instant lawsuit against Milestone, alleging violations of § 1981 for: (1) discrimination based on his race; and (2) retaliation for complaining about racial discrimination.  [Filing No. 1.]  During his deposition, Mr. Torrence was asked about the allegations in his Complaint.  [Filing No. 44-2 at 6-7.]  When asked if the reference in the Complaint to similarly situated employees was meant to refer to anyone other than Mr. Rebeck, he said no.  [Filing No. 44-2 at 6.]  When asked about the allegations regarding his complaints of discrimination to Milestone, he stated that the allegations were referring only to the complaints he made to Mr. Randle and Ms. Lucas, and there were no other complaints.  [Filing No. 44-2 at 6.]  He also clarified that these complaints were made in December 2015, after he was laid off.  [Filing No. 44-2 at 6.]  In his answers to Milestone's interrogatories, Mr. Torrence stated that the allegations in his Complaint referred to complaints that he made to Mr. Randle, Ms. Lucas, and Roger Hardwick, an employee of the Union, but he did not mention the October 2015 conversation with Mr. Washburn.  [Filing No. 35-2 at 9-10.]

Milestone has filed a Motion for Summary Judgment, [Filing No. 35], which is now ripe for the Court's decision.  Milestone asks the Court to grant summary judgment in its favor on both the discrimination and retaliation claims, or, in the alternative, on Mr. Torrence's claim for punitive damages.

### III.
### DISCUSSION

#### A.  Adequacy of Citations

As a preliminary matter, the Court notes that, in its reply brief, Milestone argues that Mr. Torrence's response brief does not comply with the record citation conventions established by the

Local Rules for the Southern District of Indiana and this Court's Practices and Procedures. [Filing No. 45 at 3-6.] Specifically, Milestone points out that: (1) Mr. Torrence's exhibits were filed after his supporting brief; (2) none of the citations are to the applicable docket, attachment, or .pdf page numbers; (3) not all of the evidence cited within the brief was included within the designation of evidence; and (4) there are no factual citations in the Argument section of the brief. [Filing No. 45 at 5.] Accordingly, it asserts, "his briefing should be summarily rejected as improper and inadequate" and the Court should grant the Motion for Summary Judgment. [Filing No. 45 at 1; Filing No. 45 at 5-6.]

In his sur-reply, Mr. Torrence asserts that he complied with Local Rule 56-1 by citing to proper materials in his statement of material facts. [Filing No. 46 at 1-2.]¹

As Milestone correctly points out, Local Rule 56-1(e) provides that, when briefing a summary judgment motion:

> A party must support each fact the party asserts in a brief with a citation to a discovery response, a deposition, an affidavit, or other admissible evidence. The evidence must be in the record or in an appendix to the brief. The citation must refer to a page or paragraph number or otherwise similarly specify where the relevant information can be found in the supporting evidence.

S.D. Ind. Local Rule 56-1(e). The undersigned's Practices and Procedures filed in this case, [Filing No. 5], remind the parties to comply with this Rule and state that compliance "requires the party to specifically cite to evidence for each fact set forth in the fact **and** argument sections, [Filing No. 5 at 3 (emphasis in original)]. The Practices and Procedures also warn that failure to comply with Local Rule 56-1(e) or Fed. R. Civ. P. 56(e) "may result in unsupported facts being disregarded." [Filing No. 5 at 3.]

---

¹ Because Mr. Torrence's sur-reply addresses only the citation issue and does not contain arguments about other issues, it will not be discussed further in this Order.

The Practices and Procedures also contain rules concerning the filing of electronic exhibits and citation to such exhibits in briefs. [Filing No. 5 at 3-4.] Specifically, the document states that "[i]t is critically important that exhibits be filed before supporting briefs so that citations in supporting briefs are to the docket numbers of the previously-filed exhibits. This significantly facilitates the Court's review of the motion and briefs as well as the parties' review of the filed materials." [Filing No. 5 at 3.] The parties are directed that, in their supporting briefs, they must "cite to the docket number, the attachment number (if any), and the applicable .pdf page as it appears on the docket information located at the top of the filed document" in the following format: [Filing No. X-X at X.]. [Filing No. 5 at 4.]

The Court acknowledges that Mr. Torrence did not comply with the Practices and Procedures in his filing of and citation to evidence supporting his opposition to Milestone's Motion for Summary Judgment. The Court reminds Mr. Torrence and his counsel that compliance with the Practices and Procedures is not optional and is necessary to assist the Court in efficiently reviewing the filed materials. However, despite this technical error, Mr. Torrence did fulfill his obligations under Local Rule 56-1(e) and Fed. R. Civ. P. 56 by pointing to specific facts and evidence. In other words, although the citations used contravene the Court's express instructions, they are not so inadequate as to constitute a concession to Milestone's version of the facts or require the granting of summary judgment in Milestone's favor. *See Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921-22 (7th Cir. 1994) (approving of granting summary judgment where "the non-movant has failed to submit a factual statement in the form called for by the pertinent [local] rule and thereby conceded the movant's version of the facts"); *Packer v. Trustees of Indiana Univ. Sch. of Med.*, 800 F.3d 843, 848 (7th Cir. 2015) (relying on *Waldridge* to sustain "'the exacting obligation' [local] rules impose on the party contesting summary judgment to identify and guide

the court to the specific evidence on which it is relying to show that a trial is required"). Accordingly, the Court will overlook Mr. Torrence's noncompliance with the citation procedures and decide the Motion for Summary Judgment on the merits. However, the Court will not rely upon any of the evidence that Mr. Torrence referenced in his brief that is not included in his designation of evidence or located elsewhere in the record.

### B. Discrimination Claim

Milestone argues that Mr. Torrence cannot establish a *prima facie* case of racial discrimination because his only proposed comparator, Mr. Rebeck, was not similarly situated because he had a CDL. [Filing No. 36 at 12-13.] Even if he could make out a *prima facie* case, Milestone argues, it is entitled to summary judgment because Mr. Torrence has not produced evidence showing that its legitimate, nondiscriminatory reasons for treating Mr. Rebeck differently—his possession of a CDL and his superior ability to operate a backhoe—were pretextual. [Filing No. 36 at 13-16.] Specifically, Milestone contends that differences in professional licensure status and employee performance were proper reasons for retaining Mr. Rebeck longer than Mr. Torrence in 2015 and recalling Mr. Rebeck over Mr. Torrence in 2016. [Filing No. 36 at 13-14.] Furthermore, Milestone asserts, there is no evidence in the record to undermine these reasons, and Mr. Washburn's status as the sole decisionmaker responsible for hiring Mr. Torrence in spring 2015, laying him off in fall 2015, and failing to hire him in 2016 gives rise to a "common actor inference" supporting the proffered explanations for the decisions. [Filing No. 36 at 15-16.]

Mr. Torrence responds that he has presented sufficient evidence to prove a *prima facie* case of discrimination regarding his 2015 termination, because he has shown that he and Mr. Rebeck were indeed similarly situated. [Filing No. 40 at 14-15.] Specifically, he argues that Mr. Rebeck's

possession of a CDL was immaterial, because no CDL is required to operate a backhoe, which is what both employees were hired to do. [Filing No. 40 at 15.] Mr. Torrence also asserts that he presented sufficient evidence to demonstrate that the proffered reason for his termination was pretext, because, given that his work as a backhoe operator did not require a CDL, his lack of a CDL cannot be the true reason that he was laid off. [Filing No. 40 at 16.] Furthermore, Mr. Rebeck's possession of a CDL cannot be the true reason that he was kept on the crew, because he never drove a dump truck that required a CDL. [Filing No. 40 at 16.] Mr. Torrence argues that Milestone changed its reason for his termination, stating that it was due to lack of work, and such shifting explanation is evidence of pretext. [Filing No. 40 at 16-17.] He also asserts that lack of work is not a proper reason because Milestone still needed a backhoe operator after Mr. Torrence was terminated. [Filing No. 40 at 16-17.]

In reply, Milestone asserts that it produced sufficient, uncontradicted evidence that Mr. Rebeck possessed a CDL and that his CDL rendered him differently situated than Mr. Torrence. [Filing No. 45 at 7-12.] Milestone argues that Ms. Genus's statement that she never observed Mr. Rebeck driving a dump truck cannot be relied upon because it is incompetent and demonstrably incorrect, as Milestone's records show that Ms. Genus could not have observed Mr. Rebeck for every second of every day that he worked after Mr. Torrence was laid off, because Mr. Rebeck was often at different job sites than Ms. Genus and kept working for approximately a week after Ms. Genus was laid off for the season. [Filing No. 45 at 7-10.] Regardless, Milestone argues, even if Mr. Rebeck never operated a dump truck, differential treatment based on his licensure status was proper, because his CDL gave Milestone the flexibility to use Mr. Rebeck as a dump truck driver if needed, even if he never ultimately drove a dump truck. [Filing No. 45 at 10-12.]

Section 1981 of the Civil Rights Act of 1866 "protects the right of all persons 'to make and enforce contracts' regardless of race," and prohibits discrimination in the employment context. *Oliver v. Joint Logistics Managers, Inc.*, 893 F.3d 408, 411 (7th Cir. 2018) (quoting *Carter v. Chi. State Univ.*, 778 F.3d 651, 657 (7th Cir. 2015); 42 U.S.C. § 1981(a)). "To survive summary judgment on a § 1981 discrimination claim, the plaintiff must either provide enough evidence to 'permit a reasonable factfinder to conclude that the plaintiff's race . . . caused the discharge or other adverse employment action,' or employ the burden-shifting framework" established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Oliver*, 893 F.3d at 411-12 (citations omitted). The evidence is to be considered as a whole, without regard to whether a particular piece of evidence constitutes "direct" or "indirect" evidence of discrimination. *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016).

As to the *McDonnell Douglas* framework, "[t]o establish a *prima facie* case when challenging a layoff, the plaintiff must demonstrate that: (1) he was a member of a protected class; (2) he was qualified for the position; (3) he was discharged; and (4) 'similarly situated employees who were not members of the plaintiff's protected class were treated more favorably.'" *Oliver*, 893 F.3d at 414 (quoting *Bellaver v. Quanex Corp.*, 200 F.3d 485, 494 (7th Cir. 2000)). Once the plaintiff makes the *prima facie* showing, the burden shifts to the employer to offer a "legitimate, nondiscriminatory reason" for the adverse employment action. *Oliver*, 893 F.3d at 412 (citations omitted). If the employer is able to do so, the plaintiff must show that the employer's offered reason is pretextual. *Id.* (citations omitted).

There is no dispute that Mr. Torrence was a member of a protected class, that he was qualified for the backhoe operator position, and that he was laid off in November 2015. As to the *prima facie* case elements, the parties only dispute whether Mr. Torrence and Mr. Rebeck were

similarly situated. "[T]he similarly-situated inquiry is flexible, common-sense, and factual," and asks whether there are enough commonalities between individuals to permit a meaningful comparison. *Coleman v. Donahoe*, 667 F.3d 835, 841 (7th Cir. 2012).[2] "An employee is similarly situated to a plaintiff if the two employees deal with the same supervisor, are subject to the same standards, and have engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." *Fane v. Locke Reynolds*, LLP, 480 F.3d 534, 540 (7th Cir. 2007). In other words, "similarly situated employees must be directly comparable to the plaintiff in all material respects, but they need not be identical in every conceivable way." *Coleman*, 667 F.3d at 846 (internal quotations and citation omitted).

The Court concludes that Mr. Torrence has established a *prima facie* case of discrimination because Mr. Rebeck is a similarly situated comparator.[3] Both men worked as backhoe operators for Milestone and were supervised by Mr. Washburn in 2015. Although Mr. Rebeck possessed a CDL[4] while Mr. Torrence did not, this difference is not material because the evidence

---

[2] Because employment discrimination claims under both § 1981 and Title VII involve essentially the same analysis, cases concerning Title VII discrimination are instructive in this context. *See, e.g.*, *Smith v. Chicago Transit Auth.*, 806 F.3d 900, 904 (7th Cir. 2015) ("The legal analysis for discrimination claims under Title VII and § 1981 is identical, so we merge our discussion of the two claims."). The same is true for retaliation claims under both statutes. *See Williams v. Lovchik*, 830 F. Supp. 2d 604, 615 (S.D. Ind. 2011) (stating that retaliation claims under Title VII and § 1981 are "functionally identical").

[3] Although Mr. Torrence also mentions Mr. Rogers and Mr. Means in his brief, and these men were retained after Mr. Torrence was terminated, [Filing No. 40 at 7-8], the Court does not interpret those references to constitute an argument that Mr. Rogers or Mr. Means should be considered comparators. To the extent that Mr. Torrence did intend to offer those men as comparators, he has not sufficiently developed such an argument and it is therefore waived. *See, e.g.*, *Lee v. Chicago Youth Centers*, 69 F. Supp. 3d 885, 889 (N.D. Ill. 2014) (acknowledging that "undeveloped, unsupported, perfunctory, or skeletal arguments in briefs are waived").

[4] To the extent that Mr. Torrence asserts that there was no evidence that Mr. Rebeck had a CDL, other than Mr. Washburn's "self-serving statement," [Filing No. 40 at 9], he is incorrect. Mr.

demonstrates that backhoe operators are not required to have a CDL.  Therefore, Mr. Torrence was qualified for the job and Mr. Washburn could have chosen to retain Mr. Torrence over Mr. Rebeck.

The fact that Mr. Rebeck had a CDL, however, is not irrelevant.  Indeed, it constitutes a legitimate, nondiscriminatory reason for Mr. Washburn to have chosen to retain Mr. Rebeck over Mr. Torrence.  Thus, the burden is on Mr. Torrence to demonstrate a genuine issue of material fact concerning whether the offered reason is pretextual.

Pretext means "a fabrication, designed to conceal an unlawful reason;" it is "something worse than a business error," where "deceit [is] used to cover one's tracks."  *Kulumani v. Blue Cross Blue Shield Ass'n*, 224 F.3d 681, 684 (7th Cir. 2000) (citation omitted).  To demonstrate pretext, a plaintiff can present evidence showing that: (1) the defendant was "more likely than not motivated by a discriminatory reason;" or (2) the defendant's stated reason is not credible.  *Alexander v. Wisconsin Dep't of Health & Family Servs.*, 263 F.3d 673, 682 (7th Cir. 2001) (quoting *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1039 (7th Cir. 1993)).  When considering pretext at the summary judgment stage, "the only question before [the Court] is whether the plaintiff has provided evidence from which a rational trier of fact could infer that the employer's stated reasons for taking the adverse action were lies."  *Alexander*, 263 F.3d at 683.  "In determining whether the employer's reason can be characterized as pretextual, we do not evaluate whether the employer's proffered justification was accurate or even whether it was unfair. Our sole focus is on whether the employer's stated reason can be characterized as a falsehood rather than an honestly held belief."  *Robertson v. Dep't of Health Servs.*, 949 F.3d 371, 378 (7th Cir.

---

Washburn did indeed testify that Mr. Rebeck had a CDL, [Filing No. 35-5 at 6], but, additionally, a copy of the CDL itself was included in the designated evidence, [Filing No. 35-5 at 7], and Mr. Torrence acknowledged in his own testimony that Mr. Rebeck had a CDL, [Filing No. 35-3 at 26]. Accordingly, there is no genuine dispute as to the fact that Mr. Rebeck did indeed have a CDL.

2020); *see also Seymour-Reed v. Forest Pres. Dist. of DuPage Cnty.*, 752 F. App'x 331, 335 (7th Cir. 2018) ("[A] pretext analysis evaluates the honesty of the employer's explanation, not its validity or reasonableness.").

Here, the Court concludes that Mr. Torrence has presented sufficient evidence to create a genuine factual dispute concerning whether the proffered reasons for his termination in 2015—his lack of a CDL and the fact that Mr. Washburn believed that Mr. Rebeck was a better operator—are pretextual. First, Mr. Torrence has presented evidence that Mr. Washburn treated African American employees more harshly than Caucasian employees by reprimanding them for things for which Caucasian employees were not reprimanded. He also testified that Mr. Washburn distributed gift cards to Caucasian employees only, that the employee whom Mr. Rebeck replaced left because he did not like the way that Mr. Washburn treated African American employees, that Mr. Washburn used racial slurs to refer to African American employees, and that, when confronted about his treatment of African American employees, Mr. Washburn expressed that he knew he was acting inappropriately but there was nothing that the employees could do about it. These instances raise a factual issue of whether Mr. Washburn harbored racial animus toward African American employees. *See Joll v. Valparaiso Cmty. Sch.*, --- F.3d ---, 2020 WL 1316688, at *10 (7th Cir. Mar. 20, 2020) ("A remark or action by a decision-maker reflecting unlawful animus may be evidence of his or her attitudes more generally.").

In addition, other facts concerning the 2015 project could lead a reasonable trier of fact to conclude that Mr. Torrence's lack of a CDL or allegedly inferior performance were not the true reasons for his termination. First, there is the dispute as to whether Mr. Rebeck actually drove the dump truck requiring a CDL. The Court acknowledges that Ms. Genus's affidavit alone does not definitively establish that Mr. Rebeck never drove the dump truck, because other evidence

demonstrates that Ms. Genus could not have constantly observed Mr. Rebeck. Nevertheless, her testimony does suggest that, if Mr. Rebeck did actually drive the dump truck, the number of times he did so was limited, which a fact-finder may conclude is evidence that his possession of a CDL was not necessarily the reason he was retained. Furthermore, the trier of fact may look to the fact that two other operators who also had CDLs—Mr. Rogers, who primarily drove a truck, and Mr. Means—were also retained after Mr. Torrence, and, therefore, conclude that a third operator with a CDL was not actually necessary. Additionally, Mr. Washburn's statement during his deposition testimony that Mr. Rebeck was "probably better on a backhoe" that Mr. Torrence could be viewed as inconsistent with his statement to Mr. Torrence that the layoff was based on the CDL. *See Appelbaum v. Milwaukee Metro. Sewerage Dist.*, 340 F.3d 573, 579 (7th Cir. 2003) ("One can reasonably infer pretext from an employer's shifting or inconsistent explanations for the challenged employment decision."). Finally, the fact that Mr. Torrence had seniority over Mr. Rebeck, and many more years of experience operating construction equipment could be relevant to the pretext issue.

Milestone asserts that the "common actor inference" operates to defeat Mr. Torrence's claim of discrimination, because Mr. Washburn was the same person that called Mr. Torrence back to work at the beginning of the 2015 season and then laid him off at the end. The "common actor inference" refers to the fact that "it is reasonable to assume that if a person was unbiased at Time A (when he decided to hire the plaintiff), he was also unbiased at Time B (when he fired the plaintiff)." *McKinney v. Office of Sheriff of Whitley Cnty.*, 866 F.3d 803, 814 (7th Cir. 2017) (quoting *Perez v. Thorntons*, Inc., 731 F.3d 699, 710 (7th Cir. 2013)). However, the Seventh Circuit has instructed that "this inference is not a conclusive presumption and that it should be

considered by the ultimate trier of fact rather than on summary judgment or the pleadings." *McKinney*, 866 F.3d at 814. Accordingly, the common actor argument is not dispositive.

To be clear, the Court expresses no opinion at this stage concerning whether Mr. Washburn intentionally discriminated against Mr. Torrence or whether his proffered reasons for the termination were untruthful. Instead, the Court merely concludes that there is evidence upon which a rational fact-finder could draw that conclusion, and that is sufficient to preclude the entry of summary judgment in Milestone's favor as to the discrimination claim. *See Reed v. Freedom Mortg. Corp.*, 869 F.3d 543, 547 (7th Cir. 2017) ("No matter the framework employed, the ultimate legal question [on summary judgment] 'is simply whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" (quoting *Ortiz*, 834 F.3d at 765)). Accordingly, Milestone's Motion for Summary Judgment must be **DENIED** as to Mr. Torrence's discrimination claim.

### C. Retaliation Claim

Milestone argues that summary judgment is proper as to Mr. Torrence's retaliation claim for three reasons. [Filing No. 36 at 16-19.] First, it argues, Mr. Torrence's complaints to Mr. Randle and Ms. Lucas did not constitute protected activity because he did not specifically identify race or national origin as the basis for his complaints. [Filing No. 36 at 17-18.] Second, Milestone contends that Mr. Torrence produced no evidence other than his own subjective beliefs to show that Mr. Washburn was aware of the complaints, and therefore has not demonstrated that the decision not to rehire Mr. Torrence was causally connected to the complaints. [Filing No. 36 at 18-19.] Finally, Milestone argues that, because Mr. Rebeck has a CDL and Mr. Torrence does

not, Mr. Torrence has not identified a similarly situated comparator to support his retaliation claim. [Filing No. 36 at 19.]

Mr. Torrence responds that he has presented sufficient evidence to survive summary judgment as to two separate occasions of retaliation: first, when he was terminated in November 2015, and second, when he was not recalled in 2016. [Filing No. 40 at 18.] As to the termination, Mr. Torrence argues that he engaged in protected activity when he complained directly to Mr. Washburn about his treatment of African American employees, and reasonable jurors could conclude that his subsequent termination was in retaliation for that complaint. [Filing No. 40 at 18-19.] He asserts that this conclusion would be supported by the fact that Mr. Rebeck was unqualified and "[o]bviously, an employer would not retain an unqualified employee over a well-qualified employee" like Mr. Torrence. [Filing No. 40 at 19.] As to the failure to re-hire, Mr. Torrence asserts that he engaged in protected activity by complaining to Mr. Washburn, Mr. Randle, and Ms. Lucas and was not recalled in 2016 as a result. [Filing No. 40 at 19-21.] He points out that Mr. Washburn was certainly aware of the complaint that was made directly to him, and asserts that he must have also known about the complaints to Mr. Randle and Ms. Lucas because "[i]t is not credible that neither of those employees discussed the complaint with [him]." [Filing No. 40 at 21.]

In reply, Milestone argues that Mr. Torrence has failed to raise a genuine issue of material fact as to retaliation because he cannot use his self-serving affidavit to overcome contradictory deposition testimony demonstrating that his complaints to Mr. Randle and Ms. Lucas were the only complaints forming the basis of his retaliation claim and did not constitute protected activity because they did not specifically reference whether he believed his alleged mistreatment was based on his race. [Filing No. 45 at 12-15.] Milestone argues that Mr. Torrence cannot now "change[ ]

his tune" and argue that his retaliation claims are based on a complaint that he allegedly made directly to Mr. Washburn, when that alleged complaint was never mentioned in his deposition. [Filing No. 45 at 14.] Milestone asserts that Mr. Torrence is "bound by his prior testimony abandoning such reliance on any other complaints than those to [Mr.] Randle and [Ms.] Lucas" and is likewise "bound by his deposition testimony in which he expressly confirmed that he did not mention race in *those* complaints." [Filing No. 45 at 15 (emphasis in original).] This alone, Milestone argues, is sufficient to preclude Mr. Torrence's retaliation claims as a matter of law. [Filing No. 45 at 15.] Nevertheless, Milestone also argues that Mr. Torrence has failed to establish a causal connection between his complaints and the alleged adverse actions against him, because: (1) he has not presented any evidence that Mr. Washburn had knowledge of the complaints made to Mr. Randle and Ms. Lucas; and (2) even as to his newly-asserted complaint to Mr. Washburn, Mr. Torrence has not presented evidence from which discriminatory intent can be drawn, has not shown that any similarly situated employee was treated differently, and has not shown that the stated grounds for the adverse actions were pretextual. [Filing No. 45 at 15-17.]

1. Defining the Retaliation Claims and Mr. Torrence's Affidavit

"As a general rule, the law of this circuit does not permit a party to create an issue of fact by submitting an affidavit whose conclusions contradict prior deposition or other sworn testimony." *Buckner v. Sam's Club, Inc.*, 75 F.3d 290, 292 (7th Cir. 1996) (citations omitted). "However, supplemental affidavits can be employed to clarify ambiguous or confusing deposition testimony." *Id.* (citations omitted). Contradictory supplemental affidavits may also be permitted when they are based on newly discovered evidence or when the initial testimony was a result of a lapse in memory. *Kopplin v. Wisconsin Cent. Ltd.*, 914 F.3d 1099, 1103 (7th Cir. 2019) (citations omitted). A district court does not abuse its discretion when it excludes an affidavit submitted at

the summary judgment stage that "appears to be an effort to undo (contradict) the effects of the deposition testimony." *Buckner*, 75 F.3d at 293.

Here, the Court is not convinced that Mr. Torrence's affidavit submitted in support of his response is unreliable or should be excluded in its entirety. Although there are many contradictions within Mr. Torrence's deposition testimony and also between his deposition testimony and his affidavit, that is all the more reason to permit an affidavit to clarify those inconsistencies or resolve any inconsistencies that may have been the result of a lapse in memory during the initial testimony. This principle is not without limits, however, and Mr. Torrence cannot use the affidavit or his response brief to redefine his retaliation claim or add a new one where he expressly defined the scope of his claim during discovery.

Specifically, Mr. Torrence made clear in his deposition testimony and in his responses to Milestone's interrogatories that he was relying on the complaints he made to Mr. Randle and Ms. Lucas as the basis for his retaliation claims, and these complaints were made after Mr. Torrence had been laid off at the end of the 2015 season. [Filing No. 35-2 at 9-10; Filing No. 44-2 at 6-7.] Accordingly, to the extent that he argues in his response that his retaliation claim concerns his termination in the fall of 2015, based on the complaint he alleges to have brought directly to Mr. Washburn's attention, the Court concludes that Mr. Torrence is attempting to undo his prior testimony with his and Ms. Genus's affidavits, and the Court will not consider the affidavits for that purpose. *See Buckner*, 75 F.3d at 293. The Court will limit the scope of Mr. Torrence's retaliation claim to include only his contention that he was retaliated against when he was not called back to work at Milestone in the spring of 2016, based only on his complaints to Mr. Randle and Ms. Lucas.

2. Failure to Rehire in 2016

To establish a *prima facie* case of retaliation under § 1981, a plaintiff must demonstrate that: (1) he engaged in statutorily protected activity; (2) he suffered an adverse employment action; and (3) "there is a causal link between the two." *Oliver*, 893 F.3d at 413 (citation omitted).

A plaintiff engages in protected activity by, among other things, "opposing an unlawful employment practice." *Northington v. H & M Int'l*, 712 F.3d 1062, 1065 (7th Cir. 2013). The Seventh Circuit has explained that "a report of discrimination to a supervisor may be statutorily protected activity" if it includes a complaint of discrimination based on a protected characteristic "or sufficient facts to raise that inference," *Andonissamy v. Hewlett-Packard Co*., 547 F.3d 841, 851 (7th Cir. 2008), but "[v]ague and obscure 'complaints' do not constitute protected activity," *Northington*, 712 F.3d at 1065.

"[C]ausation can be established by circumstantial evidence, which includes, for example, 'suspicious timing, a pretextual explanation for the termination, and evidence that similarly situated employees were treated differently.' This list is not exclusive; the plaintiff can point to any 'other evidence from which an inference of discriminatory intent might be drawn.'" *Abrego v. Wilkie*, 907 F.3d 1004, 1015 (7th Cir. 2018) (quoting *Gracia v. SigmaTron Int'l, Inc*., 842 F.3d 1010, 1021 (7th Cir. 2016)).

As to the first element of the *prima facie* case, Milestone asserts that Mr. Torrence's complaints to Mr. Randle and Ms. Lucas do not constitute protected activity because he did not specifically complain about being discriminated against due to his race. The Court acknowledges Milestone's accurate recitation of the deposition testimony in which Mr. Torrence stated that he did not mention race, or specifically state that he was discriminated against based on his race, in his conversations with Mr. Randle or Ms. Lucas. [Filing No. 44-2 at 4.] However, elsewhere in

his deposition testimony Mr. Torrence stated that the complaints did relate to racial discrimination. [Filing No. 35-1 at 17.] Specifically, he stated in his deposition and in his interrogatory responses that he complained to both Mr. Randle and Ms. Lucas about Caucasian employees receiving gift cards while African American employees did not. [Filing No. 35-2 at 9; Filing No. 35-3 at 22-23.] Mr. Torrence also testified that he told Mr. Randle about the October 2015 conversation and the comment Mr. Washburn made about being a "dick," and, when asked if he mentioned race in that conversation, Mr. Torrence stated that he "didn't have to." [Filing No. 35-3 at 23.] Mr. Torrence also testified that all of the information he gave to Mr. Randle was then conveyed to Ms. Lucas. [Filing No. 35-3 at 25.] The Court is bound by the standard of review to draw all reasonable inferences in Mr. Torrence's favor. Given that Mr. Torrence stated that he relayed to Mr. Randle the contents of the October 2015 conversation between Mr. Washburn, Mr. Torrence, and two other African American employees, as well as the purported discriminatory distribution of gift cards, it is not unreasonable to infer that Mr. Torrence's complaints, at a minimum, contained sufficient facts to give rise to an inference of racial discrimination. *See Andonissamy*, 547 F.3d at 851. Accordingly, a genuine dispute of material fact remains as to whether Mr. Torrence engaged in protected activity.

Turning to Milestone's argument that causation cannot be established because Mr. Torrence has not produced any evidence that Mr. Washburn was ever made aware of Mr. Torrence's complaints, the Court again must draw reasonable inferences in Mr. Torrence's favor. Mr. Torrence testified that Mr. Randle and Ms. Lucas both investigated the complaints he made to them. [Filing No. 35-3 at 21.] Such testimony gives rise to a reasonable inference that, during the course of such investigation, Mr. Washburn was made aware of the complaints. Mr. Washburn's testimony to the contrary creates a genuine issue of fact that precludes summary judgment.

Milestone's argument that Mr. Torrence's retaliation claim fails for lack of a similarly situated comparator is also without merit because, as discussed above, Mr. Rebeck and Mr. Torrence were indeed similarly situated. Furthermore, there is other evidence from which a reasonable fact-finder could conclude that Mr. Torrence was unlawfully retaliated against. The fact that Mr. Rebeck was hired over Mr. Torrence despite Mr. Rebeck's lack of seniority and callback rights, the fact that two other Caucasian operators who could have driven a dump truck if needed were also rehired over Mr. Torrence, and the evidence discussed above concerning Mr. Washburn's treatment of African American employees together constitute circumstantial evidence creating a factual dispute as to causation that prevents the Court from granting summary judgment on the retaliation claim. Accordingly, Milestone's Motion for Summary Judgment is **DENIED** as to that claim.

### D. Punitive Damages

Milestone argues that, in the event that its Motion for Summary Judgment is denied as to Mr. Torrence's discrimination and retaliation claims, the Court should grant partial judgment in Milestone's favor to the extent that Mr. Torrence seeks punitive damages, because he has not produced evidence that Milestone engaged in intentional discrimination with malice or with reckless indifference to federally protected rights. [Filing No. 36 at 19-20.] Mr. Torrence does not address the issue of punitive damages in his response. [*See* Filing No. 40.] Accordingly, in reply, Milestone argues that it is entitled to summary judgment on this issue because Mr. Torrence has waived or abandoned any argument he may have in opposition. [Filing No. 45 at 6.]

The Court agrees with Milestone that, by failing to specifically address the punitive damages issue in his response, Mr. Torrence has waived any argument he might have with respect to that issue. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond

to an argument . . . results in waiver."); *De v. City of Chicago*, 912 F. Supp. 2d 709, 733 (N.D. Ill. 2012) (stating that, if a party does not present an argument concerning why summary judgment should not be entered on a particular claim, "the claim is deemed waived and the nonmoving party will lose the motion") (citations omitted). Accordingly, Milestone's Motion for Summary Judgment is **GRANTED** as to the punitive damages claim.

## IV.
### CONCLUSION

Based on the foregoing, Milestone's Motion for Summary Judgment, [35], is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. The Motion is **GRANTED** as to Mr. Torrence's claim for punitive damages, and

2. The Motion is **DENIED** as to Mr. Torrence's claims for discrimination and retaliation.


Date: 4/9/2020

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana


<u>**Distribution via ECF only to all counsel of record**</u>